389 So.2d 410 (1980)
Jerry McINTOSH, Plaintiff-Appellant,
v.
MONROE MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, Defendant-Appellee.
No. 14262.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1980.
Rehearing Denied October 30, 1980.
*411 Law Offices of Robert P. McLeod by Johnny E. Dollar, Monroe, for plaintiff-appellant.
Charles D. Patten, III, Asst. City Atty., Monroe, for defendant-appellee.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
En Banc. Rehearing Denied October 30, 1980.
MARVIN, Judge.
In this action under the Municipal Fire and Police Civil Service Law (La.R.S. 33:2471 et seq.), a Monroe fireman appeals his being fired by his Fire Chief. The Fire Chief's discipline was upheld first by the Monroe Fire and Police Civil Service Board after a hearing, and then by the district court. We affirm.
In civil service appeals, the issue before the courts is confined to whether the determination of the Board was made in good faith for [legal] cause. § 2561. These two terms are interrelated but may present separate questions in some instances. See Martin v. City of St. Martinville, 321 So.2d 532 (La.App.3d Cir.1975).
Good faith of the Board is not directly made an issue here. Where discipline is imposed for off-duty conduct in violation of a departmental rule, as it was here, the conduct proscribed by the rule must be found to be reasonably necessary for the continued efficiency of the public service being rendered by the particular department. The rule must bear a real and substantial relation to the public service offered. Leggett v. Northwestern State College, 242 La. 297, 140 So.2d 5 (1962); White v. City of Winnfield Fire Dept., 384 So.2d 471 (La.App.2d Cir.1980); In the Matter of Geiger, 337 So.2d 549 (La.App.2d Cir. 1976). If the evidence supports these findings, the statutory prerequisite of legal cause is fulfilled. See Petrus v. Guin, 378 So.2d 1016 (La.App.2d Cir.1979); Leggett, supra; White, supra; Martin, supra.
The statute permits discipline of an employee for such things as:
"(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
* * * * * *
"(5) Conduct of a discourteous or wantonly offensive nature toward the public or toward any municipal officer or employee, and any dishonest, disgraceful, or immoral conduct.
* * * * * *
"(7) The use of intoxicating liquors or habit forming drugs, liquids or preparations to an extent which precludes the employee from performing the duties of his position in a safe or satisfactory manner.
* * * * * *
"(14) The willful violation of any provision of this Part or of any rule, regulation or order adopted under its authority.
"(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the fire and police service."
*412 L.R.S. 33:2500(A), in part.
Mcintosh was informed by the Fire Chief in a letter dated April 14, 1978, that
"In keeping with the provisions of the Municipal Fire and Police Civil Service Law, pg. 29, Section 30-a, paragraphs 3 and 7 (R.S. 33:2500 A, 3 and 7); you are held to be in violation of departmental rules and regulations Article XXII, Pg. 46, Sec. A-7 and Article XX, Pg. 40, Sections B-3 and B-4 dealing with the use of intoxicants on or off duty."
Paragraphs 3 and 7 of the Municipal Fire and Police Civil Service Law (L.R.S. 33:2500 A (3) and (7)) referred to in the letter are quoted above. The pertinent parts of the Monroe Fire Department Rules and Regulations referred to in the letter are quoted below:
"A. OFFENSES. No member shall be engaged in or be involved in any of the following acts of conduct:
* * * * * *
"(7) Drinking of intoxicants while on duty or intoxication while off duty;"
Article XXII, Page 46
"B. DUTIES. ALL MEMBERS SHALL:
* * * * * *
"(3) Conduct themselves in such a manner as is approved by law abiding, self-respecting citizens;
"(4) Refrain from committing any act which might bring discredit upon the department or its members;"
Article XX, Page 40
In his brief on appeal, McIntosh complains of the generality of the reasons given him for his discharge in the letter of April 14, 1978. Unlike Policeman Powell,[1] however, he did not object at the hearing to any deficiency in the reasons given in the letter or to the admissibility of the evidence supporting the reasons (here, evidence of DWI arrests and convictions).
With over 10 years civil service, McIntosh had attained the rank of Fireman First Class and has a good service record without prior discipline. Even though it was shown that McIntosh and most of the Monroe firemen had not been called while off duty, McIntosh, unlike fireman White, supra, was required to be on call at all times when he was off duty. White, not being on call, was free to live and apparently to do what he pleased while off duty.
McIntosh did not deny that he had been arrested three times in 28 months for the offense of DWI (Art. 98, La.Cr.C.) and convicted twice. He did not object to documentary evidence of these arrests and dispositions. All of the convictions were in the West Monroe City Court. This evidence shows:
(1) McIntosh was arrested at 10:50 p. m. on September 17, 1975 for driving while intoxicated. He was convicted of DWI and was sentenced to pay a fine.
(2) McIntosh was arrested for DWI after a near accident at 11:25 p. m. on May 30, 1977. This charge was later amended to reckless operation of a motor vehicle and he was convicted of the amended charge and was sentenced to pay a fine.
(3) McIntosh was arrested for DWI second offense, at 12:52 a. m. on January 14, 1978. He was convicted on March 16, 1978, and was sentenced to pay a fine and to serve 125 days in jail. The jail sentence was suspended and McIntosh was placed on supervised probation and was ordered to serve, as one of the conditions of probation, two days each weekend in the West Monroe correctional facility for 25 weeks.
McIntosh voluntarily informed one of his superiors about this last conviction. The Department then obtained certified copies of the court records and the Chief wrote the letter quoted above. In essence the letter states that McIntosh is being fired for "intoxication off duty", (XXII A(7)), for "failure to conduct himself as a ... law abiding citizen", and for acting to bring "discredit upon the department" (XX B(3) and (4)).
At the hearing, the Board questioned McIntosh about his arrests, convictions, his *413 sentence, and the fact that his driver's license would be revoked by the State. McIntosh denied his "intoxication" but admitted the other matters and that he expected the State to "pick up" his driver's license at any time. The conviction records and L.R.S. 32:414 also make it clear that McIntosh will lose his driving privileges for being convicted of DWI second offense. The Board voted 3-2 to uphold the Chief's discharge of McIntosh. The scope of our factual review is set forth in Petrus, supra:
"Although the Personnel Board made no written findings of fact, it is to be presumed that the board found facts sufficient to afford a legal basis for its decision. Unless there is a lack of sufficient evidence to support the board's decision, and unless the decision is clearly wrong or manifestly erroneous, it must be affirmed." 378 So.2d 1020 Citations omitted.
McIntosh contended in the district court and here that he was denied equal treatment or protection of law, that he was terminated for violating an unwritten regulation, and that he did not violate any regulation. The determination of the courts in these cases is confined to "whether the decision made by the Board was made in good faith for cause." L.R.S. 33:2501. We shall discuss the appellant's contentions in the light of and in relation to the statutory direction.
While McIntosh argues that there is no presumption of his intoxication under L.R.S. 32:662, the record contains sufficient evidence to support the reasonable inference of the Chief and the Board that McIntosh was intoxicated when he was off duty, but on call, when he was arrested for DWI on three occasions and convicted twice, within about 28 months.
Obviously there is a real and substantial relation between the rule prohibiting intoxication of an off-duty, on-call, fireman and the public service offered by a fire department. It is true that this record shows that Monroe firemen of the rank of McIntosh are rarely called while off duty. This evidence speaks well of the efficiency of the department. The on-call requirement is patently necessary in the case of emergencies and catastrophies, and a fire department should be able to expect its firemen to maintain themselves in a reasonable state of readiness and efficiency even though off duty. Drinking off duty is not prohibited, but intoxication off duty and on-call can be reasonably presumed to affect the efficiency of the public service offered by the fire department.
The offense of DWI is "operating a vehicle while intoxicated." This term is further defined as being "under the influence of alcoholic beverages." Art. 98, La.Cr.C. In Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964), the Supreme Court upheld a finding of intoxication, stating that "the alcoholic content of the driver's blood (.11 percent) was sufficient to establish that he was intoxicated and that his mental and physical faculties were materially impaired ..." McIntosh's arrest and conviction records reveal that his blood alcohol content ranged from .11 to .13 percent.
McIntosh additionally was allowed to show at the hearing that three other Monroe firemen had been convicted of DWI, one of which eventually obtained the rank of Fire Chief. He complains that these firemen were either suspended for five days or received no discipline and that the result in his case is unequal protection or treatment. This argument is without merit because none of the others are shown to have been disciplined after being convicted of DWI 2d offense. It is in this respect that McIntosh also complains of the existence of an alleged "unwritten" rule that a DWI 1st offense is supposed to result in a suspension, while a DWI 2d offense is supposed to result in a dismissal.
We can only look to the evidence presented before the board and we review this evidence in the light of the presumption that the board found facts sufficient to afford a legal basis for its decision. Petrus, supra. Unless it is shown that the Board acted arbitrarily or discriminatorily so as to *414 abuse its discretion, the Board's judgment, even as to the severity of the discipline, will not be overturned. Petrus, supra. McIntosh was not accused of violating any unwritten rule, but expressly of violating the Monroe Rule XXII A(7), and the other Rules (XX B(3) and (4)). There is sufficient evidence to uphold the determination that McIntosh violated the written rule against off-duty intoxication (XXII A(7)). Clearly it is within the power of the department to adopt such a rule. § 2560 A(14), (15), (3), (7). When the Board's decision is upheld on this ground, it is not necessary to discuss whether the terms of the other rules alleged to have been violated (law abiding, self-respecting, and not discrediting to the department) are constitutionally overbroad.
We hold that it is not arbitrary or ultra vires for a fire department to enact a rule which requires firemen to refrain from drinking intoxicants while on duty and from being intoxicated while off-duty and on call. Monroe Rule XXII A(7).
At appellant's cost, judgment is AFFIRMED.
HALL, Judge, concurring in the denial of the application for rehearing:
I concur in the denial of the application for rehearing. The discharge of plaintiff because of three arrests for DWI, resulting in two convictions on that charge and one plea of guilty to reckless driving, over a 28 month period, was for cause under LSA-R.S. 33:2560(A)(3), (5) and (15) and Paragraphs B(3) and (4) of the Monroe Fire Department Rules and Regulations, quoted in the opinion of this court. I disagree with this court's opinion insofar as it justifies the discharge on the grounds of LSA-R.S. 33:2560(A)(7) and Rule A(7) of the Fire Department, the rule being much broader than the statute and bearing little if any relationship to the efficiency of the public service, especially where, as here, it is shown that off-duty firemen are rarely called to duty.
NOTES
[1] Powell v. City of Winnfield Fire & Police, etc., 370 So.2d 109 (La.App.2d Cir.1979).